UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KORY ALEXANDER, | ) | |
| | ) | |
| Petitioner, | ) | 19 C 538 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| ALEX JONES, Acting Warden, Menard Correctional Center, | ) | |
| | ) | |
| Respondent. | ) | |

**M<small>EMORANDUM</small> O<small>PINION AND</small> O<small>RDER</small>**

Kory Alexander, an Illinois prisoner serving a forty-year sentence for the first-degree murder of Darion Mason, petitions for a writ of habeas corpus under 28 U.S.C. § 2254. Doc. 1. The habeas petition is denied, and a certificate of appealability will not issue.

**Background**

A federal habeas court presumes that state court factual findings are correct unless rebutted by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Jean-Paul v. Douma*, 809 F.3d 354, 360 (7th Cir. 2015) ("A state court's factual finding is unreasonable only if it ignores the clear and convincing weight of the evidence.") (internal quotation marks omitted). The Appellate Court of Illinois was the last state court to address the merits of the claims that Alexander presses on federal habeas review. *People v. Alexander*, 82 N.E.3d 96 (Ill. App. 2017) (reproduced at Doc. 10-1). The following recounts the facts as the appellate court described them, as well as the procedural background of the state court proceedings.

A. **Factual Background**

In the late evening of November 22, 2011, Mason was set to drive his mother to work. *Id*. at 98. When approaching Mason's car, "she observed the silhouettes of her son in the

1

driver's seat and an unknown person in the back seat." *Id*. at 99.  She heard gunshots, realized that someone was shooting Mason, and screamed for help.  *Ibid*.  Mason ultimately died from the gunshots.  *Id*. at 101.

Officer Eddie Morales heard gunshots and drove in their direction.  *Id*. at 99.  As Morales approached, he saw an individual wearing black clothing, including a hooded sweatshirt, running toward him while holding something in his right hand.  *Ibid*.  Morales "exited his vehicle and demanded the individual stop."  *Ibid*.  When the individual continued running, Morales pursued until he saw someone "physically consistent with the person he had seen."  *Ibid*.

Officer Scott Guliano, responding to Morales's request for backup, drove to the area and began to search by foot.  *Id*. at 99-100.  He was joined by Officer Kevin Barnett.  *Id*. at 100.  Guliano saw a black male, wearing a black T-shirt and black jeans in 35- to 38-degree weather, exit a gangway.  *Ibid*.  When the officers told him to stop, he began running.  *Ibid*.  The officers pursued and detained that individual, and Morales later identified him in court as Alexander.  *Id*. at 99-100.

After Alexander was detained, "Morales retraced [Alexander's] steps back to where [Morales] initially saw" him and discovered a black hooded sweatshirt, a brown cloth glove, a leather glove, and a black semi-automatic handgun.  *Id*. at 99.  The firearm matched the bullets recovered from Mason's body and the shell casings at the scene.  *Id*. at 101.  A forensic analysis found gunshot residue on the cloth glove but not on Alexander's hands, the hooded sweatshirt, or the leather glove.  *Ibid*.  At least three DNA profiles were found on the sweatshirt, a mixture of DNA profiles were found on the cloth glove, and a major DNA profile was found on the leather glove.  *Id*. at 101.  While the major DNA profile on the sweatshirt matched another individual,

Alexander could not be excluded from the minor DNA profiles on the sweatshirt or from the DNA profiles on the other items. *Ibid*.

B. **State Court Proceedings**

Alexander was charged with Mason's murder. *Id*. at 99. The trial court instructed the jury that to find Alexander guilty of first-degree murder, it had to find that the State proved beyond a reasonable doubt that he "performed the acts which caused [Mason's] death" and that "when [he] did so, he intended to kill or do great bodily harm to … Mason; or [h]e knew his acts would cause death to … Mason; or [h]e knew that his acts created a strong probability of death or great bodily harm to … Mason." *Id*. at 105-06. The court also instructed the jury on a firearm enhancement, asking in a special interrogatory whether the State proved beyond a reasonable doubt that, "during the commission of the offense of first degree murder[, Alexander] personally discharged a firearm that proximately caused death to [Mason]." *Id*. at 106. The court instructed the jury that it should answer the special interrogatory only if it first found Alexander guilty of first-degree murder. 82 N.E.3d at 105-06; Doc. 10-9 at 1009-1011. A defendant convicted of first-degree murder without the firearm enhancement is subject to twenty-year minimum sentence and a sixty-year maximum sentence, while a first-degree murder conviction with the enhancement results in a higher minimum (forty-five years) and maximum sentence (life). *See* 730 ILCS 5/5-8-1(a)(1)(d)(iii); *People v. Sharpe*, 839 N.E.2d 492, 496 (Ill. 2005) (explaining how the firearm enhancement works).

The court provided the jury with two verdict forms—"guilty" and "not guilty"—for first-degree murder. 82 N.E.3d at 102, 106; Doc. 10-9 at 1012-1013. The court also provided two verdict forms for the special interrogatory, allowing the jury to find that the State had "proven"

or "not proven" that Alexander personally discharged the firearm that caused Mason's death. 82 N.E.3d at 102, 106; Doc. 10-9 at 1014-1015.

The jury found Alexander guilty of first-degree murder, Doc. 1-5 at 2, but answered the special interrogatory in the negative, finding that the State did not prove that Alexander personally discharged the firearm that caused Mason's death, Doc. 1-6 at 2. Alexander moved for a new trial, "arguing that the jury's [guilty] verdict was inconsistent [with its negative] finding in the special interrogatory." 82 N.E.3d at 102. The trial court denied the motion. *Ibid*.

Alexander raised several challenges to his conviction on appeal, two of which are pertinent here: "(1) his first degree murder conviction should be set aside because of the jury's finding on the special interrogatory, [and] (2) he was denied his right to a fair trial where the jury instructions implied that he could be guilty under a theory of accountability even though no accountability instruction was given." *Ibid*. The appellate court affirmed. *Id*. at 103-07. The Supreme Court of Illinois denied leave to appeal, *People v. Alexander*, 93 N.E.3d 1088 (Ill. 2017) (reproduced at Doc. 10-6), and the Supreme Court of the United States denied certiorari, *Alexander v. Illinois*, 138 S. Ct. 1336 (2018) (reproduced at Doc. 10-7).

## Discussion

Alexander's habeas petition asserts two grounds for relief.

**I.     Jury Instructions**

Alexander claims that the jury instructions violated his due process right to a fair trial by misleadingly implying that the jury could convict him based on an accountability theory. Doc. 1 at 5, 31-36. That claim is procedurally defaulted because, as Alexander concedes and as the state appellate court recognized, he waived the claim by not pressing it at trial. Doc. 14 at 9-12; 82 N.E.3d at 107 (noting that Alexander "acknowledge[d] he [wa]s raising th[e] issue for the first time on appeal and ask[ed] [the court] to consider the issue under the plain-error doctrine").

"When the last state court to issue an opinion on a petitioner's federal claim has resolved that claim on an adequate and independent state ground, federal habeas review of the claim is foreclosed. Typically this occurs when the petitioner failed to comply with a state procedural rule and the state court relied on that procedural default to refrain from reaching the merits of the federal claim." *Miranda v. Leibach*, 394 F.3d 984, 991-92 (7th Cir. 2005) (internal citation omitted). A state reviewing court's determination that a petitioner waived or forfeited a claim is "an adequate and independent state ground for a decision." *Franklin v. Gilmore*, 188 F.3d 877, 886 (7th Cir. 1999); *see also Richardson v. Lemke*, 745 F.3d 258, 268 (7th Cir. 2014) (holding that a federal habeas claim is "procedurally defaulted through a petitioner's initial failure to preserve it with an objection, even if the petitioner later does attempt to present it for review"); *Whitehead v. Cowan*, 263 F.3d 708, 727 (7th Cir. 2001) ("When [the petitioner] raised his … claims on direct appeal, the Illinois Supreme Court determined they were waived because [he] had not objected … during trial or in his post-trial brief … . The [Court's] ruling thus constitutes an independent and adequate state ground for its decision, and bars federal review of the issue.") (citation omitted).

The appellate court's finding that Alexander waived his challenge to the jury instructions is an adequate and independent state ground that precludes federal habeas review. True enough, the appellate court reviewed the challenge under the plain error doctrine and found no error, 82 N.E.3d at 107, but the fact that the court conducted plain error review does not relieve Alexander of the procedural default. *See Kaczmarek v. Rednour*, 627 F.3d 586, 592 (7th Cir. 2010) ("We consistently have held that where a state court reviews a federal constitutional claim for plain error because of a state procedural bar …, that limited review does not constitute a decision on the merits. … Therefore, we conclude that the waiver rule also was an adequate state law

ground."); *Rodriguez v. McAdory*, 318 F.3d 733, 735-36 (7th Cir. 2003) ("Although a state court's review of whether an error is plain often entails at least limited review of the merits, that limited review is at most entangled with the merits and certainly not entirely dependent on the merits. Thus the state court's plain error review of [petitioner's] claims did not undo his procedural default.") (internal quotation marks and citations omitted).

A habeas petitioner may overcome a procedural default by: (1) demonstrating cause and prejudice; or (2) showing that the habeas court's failure to consider the claim would result in a fundamental miscarriage of justice. *See House v. Bell*, 547 U.S. 518, 536 (2006); *Smith v. McKee*, 598 F.3d 374, 382 (7th Cir. 2010). Alexander does not argue that either exception to the procedural default rule applies, so any such argument is forfeited. *See Perruquet v. Briley*, 390 F.3d 505, 515 (7th Cir. 2004) (holding that the petitioner bears the burden of demonstrating an exception to procedural default); *Franklin v. Gilmore*, 188 F.3d 877, 884 (7th Cir. 1999) ("[P]rocedural default will be excused if a defendant can show that a failure to review the defendant's claims would result in a fundamental miscarriage of justice. Franklin, however, does not make this argument and we will not make it for him.") (citation omitted).

## II. Guilt Beyond a Reasonable Doubt

Alexander also claims that he was convicted of first-degree murder without proof beyond a reasonable doubt because discharging the firearm that killed Mason is an element of his first-degree murder charge and the jury found in the special interrogatory that he did not discharge the firearm that killed Mason. Doc. 1 at 5, 14-31. Because the state appellate court adjudicated that claim on the merits, 82 N.E.3d at 102-06, it is subject to the standard codified in 28 U.S.C. § 2254(d).

"Federal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court's decision 'was contrary to' federal law then clearly established

6

in the holdings of th[e] [Supreme] Court, § 2254(d)(1); or that it 'involved an unreasonable application of' such law, § 2254(d)(1); or that it 'was based on an unreasonable determination of the facts' in light of the record before the state court, § 2254(d)(2)." *Harrington v. Richter*, 562 U.S. 86, 100 (2011) (citation omitted); *see also Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016); *Gilbert v. McCulloch*, 776 F.3d 487, 492 (7th Cir. 2015). Alexander does not dispute any of the facts upon which the state appellate court relied in rejecting his claim, so the court considers it solely under § 2254(d)(1).

A state court's decision is "contrary to" clearly established federal law within the meaning of § 2254(d)(1) if the court "applies the wrong legal standard established by Supreme Court precedent or decides a case differently than the Supreme Court on materially indistinguishable facts." *Kamlager v. Pollard*, 715 F.3d 1010, 1015 (7th Cir. 2013) (citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). "Alternatively, a state court decision involves an 'unreasonable application of' federal law [under § 2254(d)(1)] if the state court 'correctly identifies the governing legal principle … but unreasonably applies it to the facts of the particular case.'" *Id.* at 1015-16 (ellipsis in original) (citing *Bell*, 535 U.S. at 694). To obtain relief under § 2254(d)(1), "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White v. Wheeler*, 136 S. Ct. 456, 460 (2015) (internal quotation marks omitted). The "lack of a Supreme Court decision on nearly identical facts does not by itself mean that there is no clearly established federal law, since 'a general standard' from [the Supreme Court's] cases can supply such law," *Gilbert*, 776 F.3d at 491 (alteration in original) (quoting *Marshall v. Rodgers*, 569 U.S. 58, 62 (2013)), but "a federal habeas court may overturn a state court's

7

application of federal law only if it is so erroneous that there is no possibility fairminded jurists could disagree that the state court's decision conflicts with th[e] [Supreme] Court's precedents." *Nevada v. Jackson*, 569 U.S. 505, 508-09 (2013) (internal quotation marks omitted).

Alexander argues that the appellate court's decision is contrary to *Alleyne v. United States*, 570 U.S. 99 (2013), because the State failed to prove, as an element of first-degree murder, that he personally discharged the firearm that caused Mason's death. Doc. 1 at 12, 14-26. True enough, *Alleyne* holds that the Constitution "requires that each element of a crime be proved to a jury beyond a reasonable doubt." 570 U.S. at 104. But Alexander's argument fails because, contrary to his premise, personal discharge of a firearm is not an element of first-degree murder in Illinois; rather, personal discharge of a firearm is a sentencing enhancement to first-degree murder that, if found beyond a reasonable doubt by the jury, results in a higher sentencing range. The appellate court held as much, 82 N.E.3d at 106 ("[P]ersonal discharge of a firearm is not an element of first degree murder even when the victim dies from a gunshot."), and its holding is consistent with *Sharpe*, where the Supreme Court of Illinois clearly explained that personally discharging a firearm is not an element of first-degree murder:

> Even a casual consideration of the issue reveals that for the 25-to-life [firearm] enhancement [to first-degree murder] to apply, there are indeed additional facts which must be proven: that the perpetrator personally discharged a firearm during the commission of the offense and that he "caused great bodily harm, permanent disability, permanent disfigurement, or death to another person" thereby. 730 ILCS 5/5-8-1(a)(1)(d)(iii). This is not a case in which different sentences are imposed for crimes with identical elements.

*Sharpe*, 839 N.E.2d at 520; *see* 720 ILCS 5/9-1(a) ("A person who kills an individual without lawful justification commits first degree murder if, in performing the acts which cause the death: (1) he … either intends to kill or do great bodily harm to that individual or another, or knows that such acts will cause death to that individual or another; or (2) he … knows that such acts create a strong probability of death or great bodily harm to that individual or another … .").

8

Given all this, the appellate court's affirmance of Alexander's first-degree murder conviction, despite the jury's negative finding on the firearm enhancement, is not contrary to *Alleyne*. *See Evans v. Dorethy*, 833 F.3d 758, 760-62 (7th Cir. 2016) (rejecting the petitioner's argument that the state court's affirmance of his felony murder conviction without a jury finding of "independent felonious intent" violated *Alleyne*, reasoning that "independent felonious intent" is not an element of felony murder under Illinois law). Indeed, as the appellate court recognized, the trial court faithfully implemented *Alleyne* by separately submitting to the jury the first-degree murder charge and the firearm enhancement. 82 N.E.3d at 107 ("[P]ersonal discharge of a firearm is not an element needed to convict [Alexander] of first degree murder. However, pursuant to … *Alleyne*, it was a fact that needed to be submitted to the jury in order for the State to seek the firearm enhancement sentence."). Because the jury rejected the enhancement, the trial court's forty-year sentence properly fell within the statutory range for first-degree murder (20-60 years) and not first-degree murder with the enhancement (45 years to life). *See* 725 ILCS 5/111-3(c-5) ("Failure to prove the fact beyond a reasonable doubt is not a bar to a conviction for commission of the offense, but is a bar to increasing, based on that fact, the range of penalties for the offense beyond the statutory maximum that could otherwise be imposed for that offense.").

Alexander next argues that the appellate court's affirmance of his conviction unreasonably applied *United States v. Powell*, 469 U.S. 57 (1984). Doc. 1 at 12, 26-31. Alexander's point is this: Because the State's theory of the case was that he fired the shot that killed Mason, and because the jury returned a negative finding on the firearm enhancement, the first-degree murder conviction is fatally inconsistent with the acquittal on the firearm enhancement. The appellate court's rejection of that argument, 82 N.E.3d at 104, does not unreasonably apply *Powell*; to the contrary, it faithfully implements *Powell*.

9

As Alexander recognizes, Doc. 1 at 26-27, *Powell* holds that inconsistent verdicts are permitted, not forbidden. The defendant in *Powell* argued that her convictions for using a telephone to facilitate cocaine possession offenses were fatally inconsistent with her acquittals for the cocaine possession offenses themselves. 469 U.S. at 60. The Court rejected that argument, reaffirming its holding in *Dunn v. United States*, 284 U.S. 390 (1932), that inconsistent verdicts do not violate the Constitution—even where, as in *Powell*, the jury acquits on a predicate offense and convicts on a compound offense. 469 U.S. at 64-69. Accordingly, even if Alexander's first-degree murder conviction was inconsistent with his acquittal on the firearm enhancement, *Powell* holds that the Constitution allows that inconsistency.

Alexander retorts that "*Powell* only speaks to inconsistencies between *two different counts* … [and, h]ere, there was an inconsistency of verdicts *within the same count*." Doc. 1 at 13. That argument rests on the same mistaken premise—that personal discharge of a firearm is an element of first-degree murder—as his *Alleyne* argument. Even putting that aside, Alexander has not cited, and the court cannot find, any Supreme Court decision holding that a conviction on an underlying offense cannot stand if there is an acquittal on a sentencing enhancement where the same factual theory underlies both the offense and the enhancement. Such a decision would appear incompatible with *Powell*, which rejected a similar argument involving predicate and compound offenses. More to the point on federal habeas review, absent such a Supreme Court decision, the state appellate court's rejection of Alexander's *Powell* argument cannot be deemed to have unreasonably applied clearly established federal law. *See Wright v. Van Patten*, 552 U.S. 120, 126 (2008) ("Because our cases give no clear answer to the question presented, let alone one in [the habeas petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law.") (internal quotation marks omitted, cleaned up).

## Conclusion

Alexander's habeas petition is denied.  Habeas Rule 11(a) provides that the district court "must issue or deny a certificate of appealability [('COA')] when it enters a final order adverse to the applicant."  Regarding the procedurally defaulted claim, the applicable standard is:

> When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Anderson v. Litscher*, 281 F.3d 672, 673-74 (7th Cir. 2002).  Regarding the claim decided on the merits, the applicable standard is:

> To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that … includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.

*Slack*, 529 U.S. at 483-84 (internal quotation marks omitted); *see also Peterson v. Douma*, 751 F.3d 524, 528 (7th Cir. 2014); *Lavin v. Rednour*, 641 F.3d 830, 832 (7th Cir. 2011).

This court's denial of Alexander's habeas claims relies on settled precedents and principles.  The application of those precedents and principles to Alexander's claims does not present difficult or close questions, so his petition does not meet the applicable standard for granting a certificate of appealability.  The court therefore denies a certificate of appealability.

March 11, 2020

_____
United States District Judge

11